STATE OF NORTH CAROLINA v. JAMES KENNETH FRALEY

No. COA06-663

(Filed 17 April 2007)

**1. Evidence— container full of Xanax in defendant's possession upon his arrest—failure to show prejudicial error**

The trial court did not err in a theft and use of financial cards and forgery of a check case by admitting into evidence a container full of Xanax in defendant's possession upon his arrest, because: (1) the trial court issued an instruction to the jury to disregard the evidence at the close of trial; and (2) given that defendant readily acknowledge his past and continuing involvement

with illegal drugs, no reasonable possibility exists that, without the admission of the Xanax, defendant would have been found not guilty of these charges.

**· 2. Credit Card Crimes— financial card theft—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of financial card theft under N.C.G.S. § 14-113.9(a)(1) based on alleged insufficient evidence, because: (1) the jury could have properly concluded from the evidence that defendant obtained two credit cards from the control of another without the owner's consent, and intended to use them; (2) although evidence was not presented that defendant himself stole the cards, evidence was presented that indicated defendant obtained both cards without consent and must have obtained them from either the victim directly or an intermediary; and (3) the evidence tended to show that defendant used the Visa and admitted that he planned to use the MasterCard.

**3. Forgery— check—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of forgery based on alleged insufficient evidence, because: (1) the State presented a witness's testimony that defendant brought her a check made out to her on an account bearing another individual's name, that defendant told her it belonged to his uncle and asked her to cash it for him, and that defendant signed the check or entered her name as payee in her presence; and (2) although defendant contends the witness was not credible since she admitted to using drugs during the time period of the incident and changed her story to the police about how much compensation she received from her acts, it is the province of the jury to assess and determine witness credibility.

**4. Sentencing— prior record level—miscalculation**

The trial court erred in a theft and use of financial cards and forgery of a check case by its determination of defendant's prior record level, and the case is remanded for resentencing, because: (1) N.C.G.S. § 15A-1340.14(d) provides that for purposes of determining prior record level, if an offender is convicted of more than one offense in a single superior court during one calendar week, only the conviction for the offense with the highest point total is used; (2) two of defendant's convictions for obtaining property by

STATE v. FRALEY

[182 N.C. App. 683 (2007)]

false pretenses came on the same day in Henderson County, and thus only one of them should have been used in the calculation; and (3) although defendant's stipulation as to prior record level is sufficient evidence for sentencing at that level, the trial court's assignment of level IV to defendant was an improper conclusion of law.

Appeal by defendant from judgments entered 8 July 2004 by Judge E. Penn Dameron in Henderson County Superior Court. Heard in the Court of Appeals 5 February 2007.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General M. Lynne Weaver, for the State.*

*William D. Auman for defendant-appellant.*

HUNTER, Judge.

James Kenneth Fraley ("defendant") appeals from judgments entered on jury verdicts of guilty on counts related to theft and use of financial cards and forgery of a check. We affirm the convictions but remand for resentencing.

The State's evidence tended to show that on or around 15 January 2004, an acquaintance of defendant named Mary Johnson ("Johnson") at defendant's behest cashed a check that had been stolen from David Bradley. According to Johnson, defendant brought her the check and told her it was from his uncle, but defendant had no identification card and could not cash it. He offered her a portion of the $800.00 for which the. check was written to cash it for him. Defendant filled out a portion of the check in front of Johnson before she took it to the bank, where she cashed it and turned the money over to defendant.

At some point in January 2004, two financial cards—one Visa check card and one MasterCard—were stolen from Mark Alford ("Alford"). A local Wal-Mart store turned over to police register receipts showing that the stolen Visa was used there on 19 January 2004, at 3:07 p.m., and videotape surveillance showing defendant making a purchase at that time and apparently paying with a credit card. The MasterCard was found on defendant's person incident to an unrelated search on 22 January 2004, when an officer found defendant and two others with drugs and drug paraphernalia in a motel room and located the card in defendant's pocket.

Defendant was arrested at Wal-Mart on 31 January 2004 pursuant to an outstanding warrant.[1] He was detained in a security substation at the store and asked to empty his pockets. When he did so, defendant retained a small mint container with tablets inside. He began to eat them, and when the officer asked him to place the container with the other items from his pockets, he attempted to eat all the tablets at once. The container and tablets were then taken from defendant, and the tablets were later determined to be Xanax. No charges from that incident were included in this case at trial.

A jury found defendant guilty of two counts of financial card theft and one count each of financial card fraud, forgery, and possession of stolen property on 8 July 2004. Defendant was sentenced at a prior record level of IV to four consecutive sentences of eight to ten months, followed by an additional 120 day term.

I.

[1] Defendant first argues that the trial court erred in admitting into evidence the container full of Xanax in defendant's possession upon his arrest, claiming that it is irrelevant and unduly prejudicial. This argument is without merit.

The trial court admitted the container over defendant's objection that, because defendant was not charged with any drug-related crimes, the evidence was irrelevant. The trial judge stated: "I will receive it into evidence and we may address an instruction about that later." The court did in fact issue an instruction to the jury to disregard the evidence at the close of the trial:

> Now, members of the jury, evidence has been received tending to show that the defendant may have been in possession of certain controlled substances, specifically Xanax, at the time of his arrest. You are not to consider this evidence in any way in your deliberation in these cases, for this is not one of the things for which the defendant is on trial in these cases.

This Court has noted that:

> Evidence is relevant if it tends to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence.

---

1. The record indicates only that the officer arrested defendant pursuant to one or more arrest warrants that had already been issued; it does not make clear what charges the warrants concerned.

The test of relevancy is whether the proffered evidence tends to shed any light on the subject of the inquiry or has the sole effect of exciting prejudice or sympathy.

*State v. Jackson,* 161 N.C. App. 118, 123, 588 S.E.2d 11, 15 (2003) (citations omitted). There seems no logical connection between the container of drugs and the charges against defendant; indeed, the only possible reason for its introduction could be to show that defendant is the kind of person who commits illegal acts, such as obtaining financial cards by theft and committing forgery—that is, to excite prejudice against defendant. The trial court seems also to have perceived it as an error, as evidenced by its later instruction to the jury to disregard it.

"However, when the trial court erroneously admits irrelevant evidence, the defendant must show that there is a 'reasonable possibility that, had the error in question not been committed, a different result would have been reached' at trial." *State v. Wallace,* 104 N.C. App. 498, 502, 410 S.E.2d 226, 229 (1991) (citation omitted). Defendant has not shown that such a possibility exists.

During his testimony at trial, defendant stated repeatedly that he was a habitual and long-time drug user and sometime seller. To cite only a few examples, all made during direct questioning by his own attorney: In recounting the incident that led to the forgery charges, defendant stated that he was with Johnson and another person when they obtained money via the forgery, and "did get high" on drugs bought by that third person with the money; further, he stated that he was in possession at the time of methamphetamine, which he gave to Johnson. When describing how he came into possession of the credit card found on him upon arrest, he explained that he was in the motel room "getting high partying" with several other people. When asked whether he had used a stolen financial card for his purchases at Wal-Mart, defendant stated that he paid for them with "[c]ash money" that he got from "[s]elling drugs." Defendant also admitted to having been to prison and "rehab" for drug use.

Given that defendant readily acknowledged his past and continuing involvement with illegal drugs, no " 'reasonable possibility' " exists that, without the admission of the Xanax, defendant would have been found not guilty of these charges. *Id.* at 502, 410 S.E.2d at 229. If its admission did in fact excite prejudice regarding defendant's propensity to break the law, any such prejudice is surely minute in comparison to the extensive evidence provided by defendant himself

regarding his involvement with drugs and thus as a law-breaker. Defendant has not shown that the admission of the Xanax was unduly prejudicial, and, thus, this assignment of error is overruled.

## II.

**[2]** Defendant next argues that the trial court erred in denying his motion to dismiss the charges of financial card theft and forgery on the grounds of insufficient evidence. We disagree.

"When a defendant moves for dismissal, the trial court is to determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "If there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988). This is true "even if the evidence likewise permits a reasonable inference of the defendant's innocence." *State v. Butler*, 356 N.C. 141, 145, 567 S.E.2d 137, 140 (2002). "In ruling on a motion to dismiss for insufficient evidence, 'the trial court must consider the evidence in the light most favorable to the State and give the State every reasonable inference to be drawn therefrom.'" *State v. Davidson*, 131 N.C. App. 276, 282, 506 S.E.2d 743, 747 (1998) (citation omitted).

The charges of financial card theft were brought under N.C. Gen. Stat. § 14-113.9(a)(1) (2005), which states:

(a) A person is guilty of financial transaction card theft when the person does any of the following:

(1) Takes, obtains or withholds a financial transaction card from the person, possession, custody or control of another without the cardholder's consent and with the intent to use it; or who, with knowledge that it has been so taken, obtained or withheld, receives the financial transaction card with intent to use it or to sell it, or to transfer it to a person other than the issuer or the cardholder.

*Id.*

STATE v. FRALEY

[182 N.C. App. 683 (2007)]

The theft charges here relate to the two cards (a Visa and a MasterCard) stolen from Alford, the cards' rightful owner. As the judge noted in his ruling on the motion to dismiss, the evidence tended to show that the last time Alford was in possession of the cards to his knowledge was on January 17th; that the Visa card was used by someone other than Alford at Wal-mart on the 19th; and that the MasterCard was found in defendant's possession on the 22nd.

As to the Visa, at trial, the State presented a security tape from Wal-Mart showing defendant shopping there, making a purchase at the time of the unauthorized charge on the Visa and apparently paying for it with a credit card. The State also presented register receipts obtained from Wal-Mart showing purchases made with Alford's Visa card corresponding to the time of defendant's purchases. The card itself was never located.

As to the MasterCard, a police detective found it in defendant's pocket during a search conducted at a motel room where drug use had been reported.[2] It was produced at trial as State's Exhibit 1. During his testimony, when asked about the card defendant stated "I obtained it" and "I planned to use it."

From this evidence, the jury could have properly concluded that defendant obtained the cards from the control of another without Alford's consent and intended to use them. Although evidence was not presented that defendant himself stole the cards, evidence was presented that indicated defendant obtained both cards without consent and must have obtained them from either Alford directly or an intermediary. Further, the evidence tends to show he actually used the Visa and he admitted that he planned to use the MasterCard. Thus, the motion to dismiss on these counts was properly denied.

[3] As to the sufficiency of the evidence regarding the forgery charge, the relevant statute states: "It is unlawful for any person to forge or counterfeit any instrument, or possess any counterfeit instrument, with the intent to injure or defraud any person, financial institution, or governmental unit." N.C. Gen. Stat. § 14-119(a) (2005).

---

2. It appears from the record that upon defendant's arrest on January 31st, the arresting officer found a third credit card (State's Exhibit 2A) with Alford's name on it stuffed in the backseat of his patrol car that defendant had apparently hidden there during his ride to the police station upon his arrest. This was marked State's Exhibit 2A; its account number ends with 7344. However, defendant was not charged with the theft of that card; the verdict sheet reflects the account number of the card he was charged with stealing, and it matches the card found on defendant in the motel room rather than the one found in the patrol car, ending with 3955.

The State presented evidence in the form of testimony by Johnson that defendant brought to her house a check made out to her on an account bearing David Bradley's name. She further testified that defendant told her it belonged to his uncle and asked her to cash it for him, signing the check or entering her name as payee in her presence. Defendant argues that Johnson was not a credible witness because she admitted to using drugs during the time period of the incident and changed her story to the police about how much compensation she received for her actions. However, it is "a long-standing principle in our jurisprudence" that "it is the province of the jury, not the court, to assess and determine witness credibility." *State v. Hyatt*, 355 N.C. 642, 666, 566 S.E.2d 61, 77 (2002). If the jury found her story credible, they could have properly concluded that defendant forged the check with the intent to defraud David Bradley. Thus, the motion to dismiss was properly denied.

### III.

[4] Defendant's final argument pertains to the prior record level assigned to him and used in determining his sentence. He stipulated to having a prior record level of IV and was sentenced at that level. Defendant now argues that one of the prior convictions included in that calculation should not have been considered and without its inclusion his prior record level would have been III. As such, defendant argues, the case should be remanded for resentencing. We agree.

Per N.C. Gen. Stat. § 15A-1340.14(d) (2005), "[f]or purposes of determining the prior record level, if an offender is convicted of more than one offense in a single superior court during one calendar week, only the conviction for the offense with the highest point total is used." *Id.* According to the prior record level worksheet, two of defendant's convictions for obtaining property by false pretenses came on the same day in Henderson County, and thus only one of them should have been used in the calculation. Without the two points added in because of the second conviction, defendant would have been classified as a level III.

The State concedes that the calculation was made improperly but argues the error was not prejudicial because, pursuant to N.C. Gen. Stat. § 15A-1340.14(b)(6), the trial court could have imposed an additional point based on the offenses properly considered in calculating his prior record level. That statute states that "[i]f all the elements of the present offense are included in any prior offense for which the offender was convicted, . . . [add] 1 point." *Id.* Defendant's worksheet

reflects four previous convictions for forgery, for which he was also convicted in the case at hand.

Although defendant's stipulation as to prior record level is sufficient evidence for sentencing at that level (per N.C. Gen. Stat. § 15A-1340.14(d)(1)), the trial court's assignment of level IV to defendant was an improper conclusion of law, which we review *de novo. See Carringer v. Alverson*, 254 N.C. 204, 208, 118 S.E.2d 408, 411 (1961). In *State v. Toomer*, 164 N.C. App. 231, 595 S.E.2d 452 (2004) (unpublished), on almost identical facts, this Court remanded for resentencing, stating that because the trial court had not made findings of fact that one of the offenses for which defendant was being sentenced contained all the elements of the prior offense, and as such "[i]t is not within our province as a reviewing court to make findings or to substitute our judgment for that of the sentencing court." *Id.* at 231 (slip op. 2), 595 S.E.2d at 452 (slip op. 2). Thus, we remand the case for resentencing so that defendant's prior record level can be properly calculated.

Because the admission of irrelevant evidence did not prejudice defendant and there was sufficient evidence for the jury to convict him, we overrule defendant's first two assignments of error. However, because an error was made in calculating his prior record level, we remand for resentencing.

Remanded for resentencing.

Chief Judge MARTIN and Judge STROUD concur.